| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------------X<br>In Re:<br><br>980 ATLANTIC HOLDINGS LLC,<br><br>                        Debtor.<br><br>---------------------------------------------------------------X | **Adjourned Hearing Date and Time**<br>**September 10, 2024 at 9:30 am**<br><br><br><br>Chapter 11<br>Case No. 24-42977 (NHL) |

**BLDG OCEANSIDE LLC'S RESPONSE TO DEBTOR'S MOTION FOR
AN ORDER PURSUANT TO 11 U.S.C. § 506(a) AND FEDERAL RULE OF
BANKRUPTCY PROCEDURE 3012 TO DETERMINE THE AMOUNT OF
SECURED CREDITOR'S CLAIM**

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

BLDG Oceanside LLC ("BLDG"), through its counsel Kucker Marino Winiarsky & Bittens, LLP, respectfully submits this response to the motion filed by 980 Atlantic Holdings LLC, the debtor and debtor in possession (the "Debtor"), seeking the entry of an order determining the amount of the secured claim of Atlantic Avenue Capital LLC. ("Mortgagee" or "Atlantic") pursuant 11 U.S.C. § 506(a) and Federal Rule of Bankruptcy Procedure 3012 and states as follows:

## STATEMENT OF FACTS

1. On or about April 18, 2014, BLDG, as owner and lessor, and the Debtor, as tenant, entered into an Agreement of Lease ("Ground Lease"), a copy of which is attached hereto as **Exhibit "A"**, for the premises described as Block 1124, Lots 37, 46, 47, and 50, located at 980 Atlantic Avenue, Brooklyn, New York 11238 ("the Premises").

2. Thereafter, on or about September 19, 2016, and pursuant to the Ground Lease, the Debtor, as mortgagor, entered into a Leasehold Mortgage, Assignment of Leases and Rent and Security Agreement and an Assignment of Lease and Rents (collectively "the Mortgage") with non-party Prospect Place Capital LLC (the "Original Lender"), as mortgagee, in order to secure a loan in the amount of $2,700,000.00 ("the Note").

3. In good faith, BLDG executed a Ground Lessor Estoppel ("Estoppel"), a copy of which is attached hereto as **Exhibit "B"**, in favor of the Original Lender, which, *inter alia*, restated and confirmed that part of the Ground Lease respecting leasehold mortgages. Notably, the Estoppel did not enlarge, alter or modify any other provisions of the Ground Lease, including those specifically pertaining to leasehold mortgages and which entities constituted protected leasehold mortgagees, in any way. The Estoppel did, however, provide that notices should be sent to "Lender," *i.e.*, protected leasehold mortgagees, simultaneously with notices to the Debtor.

4. In January 2018, the Original Lender sent a Notice of Default and Acceleration advising the Debtor that it was in default of the Leasehold Mortgage and that the loan was being accelerated. Thereafter, on or about December 14, 2018, the Original Lender executed an "Assignment of Mortgage" and an "Assignment of Assignment of Leases and Rents", without recourse, (the "Assignments"), a copy of which is attached hereto as **Exhibit "C"**, to Atlantic, both of which documents were recorded or filed with the City Register of the City of New York. Atlantic thus effectively became the holder of the Note and Mortgage and a "Protected Leasehold Mortgagee" as that term is defined by the Ground Lease. Indeed, the Original Lender ceased to have any interest in the Premises or the Mortgage thereon by operation of the Assignments.

5. On January 14, 2019, Atlantic, as holder of the Note and Mortgage, commenced an action against the Debtor in the New York State Supreme Court, Kings County entitled <u>Atlantic Avenue Capital LLC v. 980 Atlantic Holdings LLC et. al.</u> (Index No. 500917/2019) (the "Atlantic Action") to foreclose on its Leasehold Mortgage. The Original Lender was not named as a plaintiff in the Atlantic Action. Additionally, the summons and complaint in the Atlantic Action did not name BLDG as a party-defendant but instead used the placeholder of "'John Doe" #1 through "John Doe" #60'" for, inter alia, the landlord of the Premises. Notably, the complaint filed in the Atlantic Action annexed the Assignments as exhibits thereto, thereby asserting and proving Atlantic's standing, and not that of Original Lender, as the "owner and holder of the Note, Mortgage, Guaranty and all other loan documents executed in connection with the Note (the

"Loan").

6.      Thereafter, on July 9, 2020, BLDG served a ten (10) day Notice of Default (the "Default"), a copy of which is attached hereto as **Exhibit "D"**, on the Debtor for failure to pay the required rent on the Premises. Pursuant to the terms of the Ground Lease, BLDG simultaneously served a copy of the Default on Atlantic. Consequently, on August 5, 2020, since no payments were being made to cure the Default by either the Debtor or Atlantic, BLDG served a ten (10) day Notice of Termination (the "Termination"), a copy of which is attached hereto as **Exhibit "E"** on the Debtor and, pursuant to the Ground Lease, simultaneously served the Termination on Atlantic. Therefore, pursuant to the terms of the Ground Lease, the Leasehold was terminated effective August 20, 2020[1].

7.      On August 12, 2019, Atlantic had filed a motion for summary Judgment in the Atlantic Action. Such motion was granted by short form order on January 24, 2020 while the long form decision on such motion, along with the order of reference, was not issued until April 14, 2022 (the "Summary Judgment Decision"). Pivotally, Atlantic's affidavit in support of its motion for summary judgment, signed by Robert Schuck, states that "the property is owned by a corporation, Bldg [sic] Oceanside LLC", thus acknowledging that BLDG was the landlord with respect to the Ground Lease on which they were foreclosing.

8.      In the interim, while the pendency of the Atlantic Action was unbeknownst to BLDG, on August 24, 2020, BLDG commenced an ejectment action against the Debtor in the Supreme Court, Kings County entitled <u>BLDG Oceanside LLC, Plaintiff v. 980 Atlantic Holdings LLC, Defendant</u> (Index Number 515605/2020) (the "BLDG Action").

---

1 The Termination stated that the Ground Lease would automatically terminate effective August 20, 2020, pursuant to Section 16.2(A) of the Ground Lease, more than 10 days after the Termination was dated, in order to ensure timely delivery of the Termination to the Debtor and Atlantic.

## ARGUMENT

10. Atlantic does not have a secured claim in this case because the Ground Lease terminated prior to July 18, 2024, the date that the Debtor commenced its Chapter 11 case (the "Petition Date").

11. The Ground Lease provides that a "Protected Leasehold Mortgagee" is "(i) the holder of a recorded mortgage encumbering the Leasehold Estate and (ii) is identified in a notice from such Leasehold Mortgagee that provides an address to which Landlord may send notices to such Leasehold Mortgagee under this Lease." See Exhibit A at Section 28.1(A) (emphasis added). Atlantic was adequately noticed of Tenant's default(s) under and termination of the Ground Lease and thus cannot claim it was not so noticed simply to overcome its own failure to cure its mortgagor's default(s) and effectively save its security of the leasehold from its resultant termination.

12. The Default and Termination Notices (Exhibits D and E) were served in accordance with Articles 16 and 25 of the Ground Lease as opposed to any statutory notice requirement(s), which would be immaterial to the chattel mortgage at issue. Pivotally, the Estoppel Certificate did not modify, alter, or otherwise affect the notice provisions of the Ground Lease. In this respect, Section 16.2(A) of the Ground Lease provides that:

> in the event any Event of Default has occurred and any period to cure prescribed in this Lease has expired, Landlord shall, in addition to any other remedies available to it under this Lease, at law or in equity, be entitled, at its option, at any time thereafter while such Event of Default is continuing, to give written notice to Tenant stating that this Lease and the Term shall expire and terminate ten (10) days from the giving of such notice and the Term and all rights of Tenant under this Lease shall expire and terminate upon the expiration of such ten (10) days with the same effect as if the tenth (10th) day after such notice is given to Tenant by Landlord were the Fixed Expiration Date and Tenant immediately shall quit and surrender the Premises…

Exhibit A.

13. Thus, the service of the Termination on the Debtor and Atlantic effectuated the termination of the Ground Lease. Such Termination was undeniably provided to the Debtor and Atlantic by BLDG. Indeed, despite same being unequivocally alleged in the Atlantic Action (along with the appeal associated therewith), Atlantic has never even attempted to deny that it received such notice as its valid and proper address.

14. Section 16.2(C) of the Ground Lease further reiterates this point by providing that if the lease is terminated pursuant to Section 16.2(A), then to the extent permitted by applicable law, Landlord, without notice, may reenter and repossess the Premises using such force for that purpose as may be necessary and lawful and may dispossess Tenant by summary proceedings or other legal proceedings (See, Exhibit A).

15. BLDG gave the appropriate Termination to the Debtor which, by operation of law, subsequently terminated the tenancy on August 20, 2020. The documentary evidence attached to this Response supports the Termination of the Ground Lease as a matter of law. Specifically, Section 25.1(2) of the Ground Lease provides that

> "notices are to be sent to each Mortgagee and Lessor which have requested same, **by notice given in according with the provision of the Article 25** at the address designated by such Mortgagee or Lessor; or to such other addresses as Landlord, Tenant or any Mortgagee or Lessor may designate as its new address for such purpose by notice given to the others in accordance with the provisions of this Article 25." See Exhibit A (emphasis added).

The specific Notice provisions of the Ground Lease must prevail over other, inconsistent, or ambiguous terms of the Ground Lease or other documents including, as is relevant herein, the Estoppel.

16. In certain pleadings filed in Atlantic Action, Atlantic insists on "strict construction" of the Ground Lease terms regarding the Notice provision. However, in these pleadings, Atlantic then takes the inconsistent position that the Estoppel must control with respect to the party to whom Notice is to be given. Indeed, Atlantic nonsensically insists that its predecessor-in-interest, the Original Lender (Prospect Place Capital LLC), should have been

noticed of Tenant's default(s) under the Lease pursuant to the Estoppel instead of Atlantic, the actual holder of the Note and Mortgage at the time of the Default and Termination. Such interpretation, as posited by Atlantic, would contravene the clear intentions of the parties, as demonstrated by multiple provisions of the Ground Lease, including Article 28, all of which provisions were incorporated by reference into the Estoppel. See Exhibit B at ¶ 2.

17. Pivotally, Article 28 of the Ground Lease, which governs the Leasehold Financing terms, at Section 28.1(A) defines a "Protected Leasehold Mortgagee" as

> any Leasehold Mortgagee that (i) is the holder of a recorded mortgage encumbering the Leasehold Estate and (ii) is identified in a notice from such Leasehold Mortgagee that provides an address to which Landlord may send notices to such Leasehold Mortgagee under this Lease (a 'Protected Leasehold Mortgagee Notice'). (See, Exhibit A).

Additionally, section 28.1(A) of the Ground Lease provides that

> [i]n the event of any assignment of a Leasehold Mortgage or in the event of a change of address of a Leasehold Mortgagee or of an assignee of such Leasehold Mortgagee, notice of the new name and address shall be provided to Landlord. (See, id).

And section 28.1(B) of the Ground Lease further provides that

> any Protected Leasehold Mortgagee . . . may, with Landlord's consent, assign this Lease, and upon such assignment shall be relieved of and released from any and all obligations under this Lease which arise after the effective date of such assignment. (See, id).

And furthermore, Section 28.2(A) provides that

> [n]othing in this Section shall limit the right of Landlord to terminate this Lease upon occurrence of an Event of Default, subject however to the right of **any** Protected Leasehold Mortgagee to cure any Event of Default by Tenant during the cure period given to Tenant. (See, id)(emphasis added).

Thus, as per the explicit terms of the Ground Lease, the only "Protected Leasehold Mortgagee", after the Assignments were effectuated, was and remains Atlantic. As such, Atlantic, as the holder of the Note and Mortgage, was properly served with the Notices of Default and Termination pursuant to the plain language of the Ground Lease, which was never altered or modified. Atlantic

failed to cure Tenant's default within the timeframes set forth in the Ground Lease – as it was authorized to do – and thus the Leasehold was validly and effectively terminated on August 20, 2020 as a matter of law.

18.     Since the Leasehold terminated, Atlantic's interest therein and its security for its mortgage with Tenant also terminated. *See 61 Assoc. v. 425 Fifth Ave. Realty Assoc., L.P.*, 207 A.D.2d 323 (1st Dept. 1994) (holding "a leasehold mortgage has no duration beyond the term of the lease").

19.     Finally, Section 28.2(B) of the Ground Lease provides that the

> sole effect of Landlord's failure to give any notice of default to a Protected Leasehold Mortgagee simultaneously with such notice of default being given to Tenant shall be that such notice of default shall not be effective as to such Protected Leasehold Mortgagee unless and until such notice of default is given to such Protected Leasehold Mortgagee, and (ii) Landlord's failure to give any notice of default to a Protected Leasehold Mortgagee shall not affect the validity of any notice of default with respect to Tenant.

Thus, as it is undisputed that BLDG noticed Debtor as to both its default and the termination of the Ground Lease, pursuant to the provisions of the Ground Lease, BLDG inarguably also properly provided the Termination to, and such Termination was effective with respect to, Atlantic, as the Protected Leasehold Mortgagee. This is all in full accord with the publicly filed Assignments executed by Atlantic, whereby the Original Lender, as Assignor, assigned to its assignee, Atlantic, "without recourse to Assignor in any event, the mortgages encumbering" the Premises, "together with the bonds or notes **or obligations described in said mortgage**, and the monies due and to grow due thereon with interest" (Exhibit C) (**emphasis added**).

20.     In pleadings filed in the Atlantic Action, Atlantic contends that the Estoppel's outdated, stale, and ineffective notice provision controls, which provision purportedly requires service only upon the prior mortgagee. This assertion is contrary to well-settled New York State common law which provides that "[s]trict compliance with contract notice provisions is not required in commercial contracts when the contracting party receives actual notice and suffers no

detriment or prejudice by the deviation." *J.C. Studios, LLC v. Telenext Media, Inc*., 32 Misc.3d 1211[A] (Kings Co. 2011]); and see *Iskalo Elec. Tower LLC v. Stantec Consulting Servs., Inc*., 79 A.D.3d 1605 (4th Dept. 2010) (holding that "strict compliance with the notice provision of the lease was not required inasmuch as defendant does not contend that it did not receive actual notice, nor does it contend that it was prejudiced by the deviation") (emphasis added). Applying such precedent here, Atlantic cannot – and did not in its pleadings filed in the Atlantic Action – claim that it did not receive actual notice of the Default and Termination.

21.     Simply put, Atlantic was served with copies of the Default and Termination Notices by the methods prescribed by the Ground Lease and Estoppel at its address noted on the Assignment which was publicly recorded with the New York City Department of Finance Office of the City Register.

22.     Moreover, Atlantic's argument that the address set forth in the Estoppel was the sole address to effectuate valid notices pertaining to the Ground Lease is also belied by the language of the Estoppel itself. Indeed, as clearly set forth in paragraph 2 of the Estoppel, such address may be effectively changed upon "notif[ication] by Lender." See Exhibit B. As stated, the Assignments, which assigned all rights therein from Original Lender to Atlantic, were publicly filed and recorded by Atlantic. Such recordings, mandated by Real Property Law §291, are specifically purposed to provide notice to the general public of such conveyance. See *Merchants' Bank of Buffalo v. Weill*, 163 N.Y. 486, 492 (1900) ("the debtor chose not to give public notice of his private executory agreement, by recording […]"); *Mott v. Oppenheimer*, 135 N.Y. 312, 318 (1892) ("of this agreement the defendants had constructive notice from its public record, if they did not have actual notice."); *Coleman v. Rubin*, 2017 N.Y. Slip Op 31351(U), *4 (Queens Co. 2017) ("Also, Coleman's claim that Rubin actively concealed a recorded deed is without merit since a duly recorded deed puts the public on notice of its filing. Here, Coleman was on constructive notice of the transfer of the property by virtue of the recording of the deed."); In re *High Falls Sulphite Pulp & Min. Co*., 20 Misc. 626, 627 (St Lawrence Co. 1897) ("The proper

execution by a corporation of a general assignment and its recording so as to give public notice are so surely matters of grave substance that we must infer that the legislature designed them to be mandatory."); *Cerrato v. BAC Home Loans Servicing (In re Cerrato)*, 504 B.R. 23, 33 (Bankr. E.D.N.Y. 2014) ("Any purchaser of the Property, as of the commencement of this case, would be charged with notice of the public record, which includes any properly recorded instruments.") Therefore, even if the Estoppel address were still applicable – which BLDG ardently contends it was not – it was effectively changed by the public filing of the Assignments.

23.    It is thus axiomatic that the notice of Default and Termination were effective against the Debtor and Atlantic, and thus Atlantic's security of the Leasehold was eviscerated by the Termination.  Therefore, this Court should determine that Atlantic does not hold a secured claim against the Debtor in this case.

DATED:   New York, New York
             September 3, 2024

                                               Kucker Marino Winiarsky & Bittens, LLP
                                               Attorneys for BLDG Oceanside LLC

                                           By: /S/ Eric Mccavey
                                                 Eric Mcavey, Esq.
                                                 Joel Shafferman, Esq.
                                                 747 Third Avenue
                                                 New York, New York 10017
                                                 Telephone: (212) 869-5030
                                                 Mobile:     (917) 847-8050
                                                 Email: jshafferman@kuckermarino.com