UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re                                                    Chapter 11

   980 ATLANTIC HOLDINGS LLC

                   Debtor        Case No. 24-42977(NHL)

---------------------------------------------------------X

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE
STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS
DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT
BEEN APPROVED BY THE COURT.

### DEBTOR'S DISCLOSURE  STATEMENT FOR PLAN

I.       INTRODUCTION

     980 Atlantic Holdings LLC (the "Debtor") has filed its First Amended Plan, dated
September _ _ _ (the "Plan"), with the United States Bankruptcy Court for the Eastern District of
New York (the "Bankruptcy Court"). A copy of the Plan accompanies this Disclosure Statement.

     A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of
the Plan. Capitalized terms not otherwise defined in the Disclosure Statement are as defined in the
Plan.

     This Disclosure Statement contains information about the Debtor and describes the Plan.
***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully
and discuss them with your attorney. If you do not have an attorney, you may wish to consult
one.***

     The proposed distributions under the Plan are discussed later in this Disclosure Statement.
General unsecured creditors are classified in Class 3 and will receive a distribution of no less than
5% of their Allowed Claims, to be distributed in Cash on the Effective Date of the Plan.

   **A.  Purpose of This Document**

 This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will
receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm

the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B.  Deadlines for Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement and confirm the Plan will take place via zoom conference on _____, at _____. in Courtroom 35__, United States Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, N. Y. 11201 with the following dial in information_____.

2. *Deadline For Objecting to the Adequacy of Disclosure Statement and Confirmation of the Plan.*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Debtor's counsel, Law Offices of Issaac Nutovic, 261 Madison Avenue, 26th Floor, New York, N.Y. 10016 or inutovic@nutovic.com; and the Office of The United States Trustee,  201 Varick Street, Suite 1006,  New York, NY 10014 by _____ by 5:00 p.m.

4. *Identity of Person to Contact for More Information*
If you want additional information about the Plan, you should contact Isaac Nutovic, via email inutovic@nutovic.com.

### C.  Disclaimer

***The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until _____.***

### II.      BACKGROUND

A.            Description And History Of Debtor

The Debtor is a limited liability corporation with a principal place of business at 1030 41st Street, Suite 1, Brooklyn, New York. The membership interests in the Debtor are owned 54% by CSRE LLC and 46 % by 980 Atlantic Holdings Operations LLC.

The Debtor's assets were improperly managed by a prior manager, Strulovitch, resulting in a several multi--plaintiff lawsuits alleging fraud against both the Debtor and Strulovitch. In 2021 the Debtor signed an arbitration agreement which encompassed more than 180 plaintiff parties with claims against Strulovitch and his entities. In mid-2022 the arbitrators directed Strulovitch to relinquish control of the Debtor's affairs to three co-managers; Raphael Barouch Elkaim, Binyomin Halpern and Benjamin Schonberg. The co-managers believe that approximately $4 million in transfers from the Debtor's bank accounts are recoverable from Strulovitch but that those claims are subject to the arbitration agreement.

The Ground Lease; the Leasehold Mortgage and the Debtor's Defaults. On April 14, 2014, the Debtor and BLDG Oceanside LLC (the "Landlord") signed a 45-year ground lease (the "Ground Lease") for a property known as 980 Atlantic Avenue Brooklyn (the "Property"). The Property is improved by a four-story commercial/industrial building. The Property generated three different sources of revenue. It has a sublease with Transit Wireless for the upper floor; a license with Verizon Wireless for antennas on the roof and a sublease of the side of the building for a billboard.

In September 2016, a few months after entering into a sublease with Transit Wireless, the Debtor took out a $2.7 million loan (the "Loan") from non-party Prospect Place Capital LLC ("Prospect") secured by a Leasehold Mortgage and Assignment of Leases and Rents (the "ALR"). The Loan matured on September 19, 2017. The Debtor failed to make payment of the matured Loan. As a result the matured loan began to accumulate interest at the rate of 24% p.a.

In December 2018, Prospect assigned the Leasehold Mortgage and ALR to Atlantic Avenue Capital LLC ("Mortgagee"). After the assignment, the Mortgagee exercised its rights under the ALR and began collecting and pocketing the rent monies due to the Debtor. As a result, no payments were made to the Landlord after November 2019. The Landlord then served the Debtor, Strulovitch, and the Mortgagee with a written notice of default on July 9, 2020. It thereafter served a 10-day notice of termination on the Debtor, the Mortgagee and Strulovitch, on August 5, 2020, effective ten days later.

The Landlord has asserted that the Ground Lease terminated by operation of law on August 20, 2020. The Mortgagee, however, has taken the position that because notice was not properly served by the Landlord, the Ground Lease has not been properly terminated.

The following actions were pending against the Debtor at the time of the commencement of this case.

A. Mortgagee Foreclosure Action. In January 2019, the Mortgagee commenced an action in New York Supreme Court Kings County, Index # 500917/2021 to foreclose on its leasehold mortgage and the Court entered an order granting summary judgment for the Mortgagee on February 10, 2020. An order appointing a referee was entered on April 14, 2022. Other than an order correcting a scrivener's error in the 2022 order, the court docket list reveals no progress made to further the foreclosure action. The Mortgagee's delay in completing the foreclosure appears to be a deliberate strategy to allow it to collect substantial rents without making payment to the Landlord and to let the amounts due from the Debtor build up at the default rate of 24% p.a.

B. Landlord Actions. On August 16, 2020, the Landlord commenced an action, against the Debtor only, in the New York Supreme Court Kings County, Index # 515605/2020 seeking a judgement of possession for failure of the Debtor to pay rent. Apparently recognizing that an action

against the Debtor only would not bind the Mortgagee, on August 16, 2022, the Landlord commenced an action in the New York Supreme Court Kings County, Index # 523751/2022 seeking, inter alia, a declaratory judgment that the Landlord had properly terminated the Ground Lease as to all parties. No decision has been made as to whether the Ground Lease has been terminated.

Just prior to the case being commenced, the co-managers of the Debtor were able to interest third party investors in entering into an agreement with the Landlord whereby 980 Atlantic Building LLC (the "New Tenant"), a new entity, would be given a new ground lease for the Property with the term of the lease starting once all claims arising from the old Ground Lease had been resolved. Some of the individuals who currently have indirect membership interests in the Debtor will have indirect equity interests in the New Tenant.

B.    **Events During the Chapter 11 case**. The Debtor commenced this case on July 18 2024 and shortly thereafter filed a plan of reorganization and a motion to determine the amount of the secured claim of the Mortgagee. That matter has been adjourned in light of an agreement between non-debtor parties which allowed the Debtor to file its First Amended Plan. The agreement provides *inter alia* for the sale of the Mortgagee's loan documents to 980 Atlantic Note LLC which will then support the Debtor's plan. The agreement was structured so that all closing documents were signed and delivered into escrow with triggering events (including the entry of a confirmation order in this case and the payment to the escrow agent of that portion of the purchase price not already in escrow) automatically providing for release of the signed documents from escrow. A copy of the agreement (without exhibits) is annexed as Exhibit A.

The Debtor has taken the following actions since commencing this case:

•      Provided documents to the Office of the United States Trustee and attended the Initial Debtor Interview;

•      Opened a DIP bank account;
•      Attended the section 341(a) Meeting of Creditors
•      Filed the required schedules and Local Rule Affidavits;
•      Retained Counsel;
•      Provided proof of insurance;
•      Filed monthly operating reports;
•      Submitted a bar date order to the Court;
•      Co-ordinated an Agreement with Stakeholders As a Precursor to A Plan
•      Timely filed its Plan and Disclosure Statement
•      Filed Amended Schedule

C.    **Management**.  The Debtor is directed by Raphael Barouch Elkaim, Binyomin Halpern and Benjamin Schonberg. These individuals will continue in their roles after the Plan is confirmed.

**D.  Projected Recovery of Avoidable Transfers And Other Claims.**

Except for claims against Chaskiel Strulovitch and his entities the Debtor does not believe it has viable preference, fraudulent conveyance, or other avoidance actions. The Debtor's claims against Chaskiel Strulovitch are subject to a multiparty Arbitration Proceeding in which multiple

parties with claims substantially more than the Debtor's claims are also seeking a recovery from Strulovitch's assets. As a result, any recovery from Strulovitch is highly speculative. This claim is being assigned to Brooklyn Properties NY LLC in consideration for contributions to funding of the Plan.

The Debtor also has claims against Transit Wireless for not paying additional rent prior to termination of the Debtor's Ground Lease in August 20, 2020. The Debtor does not have complete records of amounts that may be due but believes that given the applicable statute of limitations they are not substantial. Transit Wireless has advised that it has substantial offsets against such claims. Transit Wireless also did not pay additional rent since August 20, 2020, but in light of the Debtor's concession that its lease was terminated on that date there would seem to be little value to any such additional rent claim. One other tenant has failed to pay rent after August 20, 2020, and the Debtor believes a claim for such rent has little value. Although the Debtor may have use and occupancy claims against tenants after August 20, 2020, they are speculative and of little saleable value.

All of these claims are being assigned to 980 Atlantic Building LLC in consideration of contributions to funding of the Plan.

**Claims Objections**. Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article 7 of the Plan.

### E.  Current Financial Conditions

Previously, the Debtor had a valuable Ground Lease on the Property which was squandered by the actions of the prior manager of the Property. The Debtor's only assets are possession of Property and the above-described claims against third parties.

### III.        SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.  What is the Purpose of the Plan?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan

### B.  **Classification**.

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into three classes of Claims and one class of Interests as follows:

Class 1—Allowed Secured Claim of Mortgagee

Class 2— Allowed Landlord Claim

Class 3—Allowed Unsecured Claims

Class 4—Allowed Equity Interests

As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax claims against the Debtor have not been classified.

Administrative Claims. Administrative Claims are the costs and expenses of the administration of a Case, allowable under section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include the liabilities incurred in the ordinary course of the Debtor's business after the Petition Date, Claims of Professionals, such as attorneys, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under section 330 of the Bankruptcy Code. In this case, the Debtor believes all of its operating expenses will be paid on confirmation, but it is applying to obtain up to $200,000 in unsecured credit from Brooklyn NY Properties to pay for anticipated urgent repairs for the Property. The loans will be without interest if the Plan is confirmed.

Priority Tax Claims. Priority Tax Claims are claims of governmental units entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code. The Debtor believes that there are no such taxes entitled to payment. However, in the event the Bankruptcy Court determines that there are such taxes which must be paid by the Debtor, these claims will be paid in full on the Effective Date. The Debtor expects that any such claims will be minimal.

Professionals' Fees.  Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to the attorneys retained by a Debtor in a case under the Bankruptcy Code. With respect to Professionals' Fees, the Plan provides that, subject to the approval of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, the Debtor shall pay the Administrative Claims owed to Professionals in full.

  All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than 30 days following the Effective Date. Upon entry of a Final Order approving an application, the fees shall be paid within three (3) days thereafter or otherwise in accordance with the Plan or as agreed to by the Professional and the Plan Funders. It is anticipated that the remaining fees and expenses owed to the Debtor's counsel will amount to approximately $70,000 -100,000.

Bankruptcy Fees.  All fees and charges incurred by the Debtor under section 1930 of title 28 of the United States Code through the Effective Date shall be paid by the Debtor when due.  The reorganized Debtor shall pay all statutory fees due and payable under 28 U.S.C. §1930, plus accrued interest, under 31 U.S.C. § 3717, on all disbursements on the Effective Date. Fees to the United States Trustee are expected to be less than $10,000.

Payments in full shall be made to holders of unclassified claims on the Effective Date.

### C.  Overview Of The Plan

The Plan resolves the Class 1 Mortgagee's substantial ($3,400,000) claim against the Debtor by having the Purchaser acquire the Mortgagee's rights for $285,000 and providing for releases to the Mortgagee from both the Debtor and the Landlord. The Purchaser of the Mortgagee's claims then agrees to allow the Mortgagee's claim to be treated as unsecured.

The Plan resolves the Class 2 Landlord's substantial claim (($4,300,000) by the Debtor surrendering its possessory rights and transferring all of its legal rights to the Ground Lease to the Landlord. In turn the Landlord is waiving its right to any distribution from the Plan (ii) assigning its claims for use and occupancy from the tenants occupying the premises since 2020 and its claims against Strulovitch to the Plan Funders and providing a release to the Mortgagee (if it does not breach its obligation to sell its Mortgage Claim).

The Class 3 Unsecured Claims when adding in the Mortgagee's Claims will be no less than $7,400,000. The last date for creditors to file claims is October 15, 2024. Unsecured claims timely filed total _____. A distribution of 5-7% will be made to these creditors on the Effective Date.

The Class 4 Equity Interests will be extinguished, and new interests will be issued to the Plan Funders.

The treatment of claims as set forth in the Plan is reproduced below.

## ARTICLE 4 - TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The following treatment of and consideration to be received by holders of Allowed Claims and Allowed Interests pursuant to this Plan shall be in full settlement, release and discharge of such Allowed Claims and Allowed Interests.

4.1 **Class 1 (Secured Claim of Mortgagee).**

Mortgagee is the current holder by assignment of a leasehold mortgage on the Debtor's rights in the Ground Lease.

A. Default Treatment—(Treatment to be provided if Optional Treatment Not Selected)

The Class 1 Claim is not impaired under the Default Treatment and is not entitled to vote on the Plan.

Treatment. On the Effective Date, Mortgagee shall receive a cash payment in the full amount of its Allowed Secured Claim.

Release of Lien Upon Payment in Full. On the Effective Date Mortgagee shall execute a document evidencing the full satisfaction, discharge and release of any Lien it may have against the Property or the Ground Lease in the form reasonably required by the Debtor. In the event that Mortgagee fails to execute such document, the Debtor may execute such document as agent for the Mortgagee. In the event that Mortgagee fails to execute such document, the Debtor may execute such document as agent for the Mortgagee.

B. Optional Treatment

The following treatment shall apply to the holder of the Class 1 Claim in the event that (i) the Loan Sale Agreement has been fully executed by all parties (including the Landlord and the Escrow Agent) and (ii) the Mortgagee notifies the Debtor at least 15 days prior to the first hearing

scheduled for confirmation of the Plan that it accepts this Optional Treatment under the Plan:

The Class 1 Claim is impaired under the Optional Treatment and is entitled to vote on the Plan.

<u>Treatment</u>. Either on or prior to the Effective Date, the Mortgagee and 980 Atlantic Note LLC shall receive *inter alia* an assignment of the rights to the Mortgagee's claims against the Debtor in accordance with the terms of that certain Loan Sale Agreement (the "<u>Loan Sale Agreement</u>"). Thereafter, the Mortgagee's Allowed Claim against the Debtor shall be treated as an Allowed Unsecured Claim together with other Class 3 Claims and all distributions to be made on account of the Class 1 Claim shall be made to the Purchaser. The Debtor shall also be authorized, to the extent required by the terms of the Loan Sale Agreement, to provide to Atlantic Avenue Capital LLC a release of all of the Debtor's claims against Atlantic Avenue Capital LLC. In the event that 980 Atlantic Note LLC obtains an assignment of the Class 1 Claim through the default provisions of the Loan Sale Agreement, the Mortgagee's Allowed Claim will still be treated as a Class 3 claim but the Debtor shall transfer any claims it may have against Atlantic Avenue Capital LLC to 980 Atlantic Note LLC.

<u>Release of Lien.</u> On the Effective Date Mortgagee shall execute a document evidencing the full satisfaction, discharge and release of any Lien it may have against the Property or the Ground Lease in the form reasonably required by the Debtor. In the event that Mortgagee fails to execute such document, the Debtor may execute such document as agent for the Mortgagee.

### 4.2    <u>Class 2 (Landlord Claim)</u>

Class 2 consists of all of the Landlord's claims arising out of the Ground Lease. The Class 2 Claim is impaired and is entitled to vote on the Plan.

<u>Treatment</u>: On the Effective Date the Landlord will settle all claims against the Debtor as follows:

(i) the Landlord will not receive any distribution under the Plan on account of its Unsecured Claim against the Debtor (ii) the Debtor's possessory rights in the Property and any rights in the Ground Lease will be transferred to the Landlord free and clear of all liens, Encumbrances, interests and claims, pursuant to an order of the Bankruptcy Court in form and substance acceptable to the Landlord and (iii) the Landlord will cause BLDG 980 Atlantic LLC to deliver a notice to the Plan Funders acknowledging that the terms for commencement of the Lease between BLDG 980 Atlantic LLC and 980 Atlantic Building LLC dated June 10, 2024 have been satisfied (iv) the Landlord will execute documents in form and substance reasonably satisfactory to the assignee, assigning to 980 Atlantic Debt LLC all claims it has or may may have against Chaskiel Strulovitch relating to the Property or his personal guaranty of the Debtor's obligations under the Ground Lease and deliver the original signed Guaranty of Chaskiel Strulovitch(v) the Landlord will execute documents in form and substance reasonably satisfactory to the assignee assigning to 980 Atlantic Building LLC  all claims it may have against any of the parties which are occupying or using, or have occupied or used, any portion of the Property and (vi) (A) if the Mortgagee has elected Optional Treatment under this Plan and has closed the Loan Sale Agreement without defaulting, the Landlord, on the Effective Date, will exchange mutual releases with the Mortgagee in accordance with the terms of the Loan Sale Agreement; (B) if the Mortgagee shall not elect Optional Treatment under this Plan or shall not be  entitled to receive a release from the Landlord under the terms of the Loan Sale Agreement, the Landlord will execute documents in form and

substance reasonably satisfactory to the assignee, assigning to 980 Atlantic Note LLC all claims it may have against the Mortgagee, in exchange for (1) 980 Atlantic Note LLC remitting 10% of net collections from the Mortgagee to the Landlord and (2) acknowledging that with respect to any rights it has acquired from the Mortgagee pursuant to the Loan Sale Agreement, the Ground Lease was terminated as of August 20, 2020, (3) acknowledging that it has no remaining rights under any estoppel certificate issued by the Landlord in connection with the Ground Lease and (4) acknowledging that it has waived any claim against the Landlord or the Property.

4.3    **Class 3 (Unsecured Claims)**

Class 3 consists of all Allowed Unsecured Claims of the Debtor. The Class 3 Claims are impaired and entitled to vote on the Plan.

Treatment On the Effective Date, the holders of Allowed Unsecured Claims will receive a cash payment in the amount of 5% of their Allowed Claims. If the Effective Date occurs before November 15, 2024, an additional distribution will be made to holders of Class 3 Allowed Claims in an amount equal to the lesser of (i) $100,000 to be shared *pro rata* by Class 3 Allowed Claims or (ii) 2% of the Class 3 Allowed Claims.

4.4    **Class 4 (Equity Interests).**

Class 4 consists of two entities which hold 100% of the membership interests in the Debtor. The Class 4 holders of membership interests shall not retain their equity in the Reorganized Debtor and all such existing membership interests shall be extinguished. In exchange for Plan Funders funding the payments to holders of Allowed Unsecured Claims, and paying for the costs and expenses of administration of this Chapter 11 Case, Brooklyn NY Properties LLC shall become the owner of 100% of the membership interests of the Reorganized Debtor.

### IV.    MEANS OF IMPLEMENTATION OF THE PLAN

Prior to the Confirmation Date, the Plan Funders shall deposit $150,000 in the escrow account of the Debtor's attorney as a deposit to secure their obligations to fund all payments called for under the Plan. The Plan Funders shall pay to the Debtor the balance of the monies required to fund the Debtor's obligations under the Plan on or before the Effective Date in exchange for (i) an assignment to 980 Atlantic Building LLC of all claims and causes of action the Debtor may have against any of the parties which are occupying or using, or have occupied or used, any portion of the Property and (ii) an assignment to Brooklyn Properties NY LLC of all claims and causes of action the Debtor may have against Chaskiel Strulovitch or any of the parties to the Arbitration Proceeding.

### V.    RISK FACTORS

The Debtor expects to have all of the cash necessary to confirm the Plan in escrow prior to the Effective Date. The Loan Purchase Agreement is closing outside of the Plan. The Purchaser's acquisition of the Mortgagee's rights is necessary for the plan to work. However, the Purchaser has already funded $50,000 as a non-refundable deposit towards its acquisition of the Mortgagee's rights and has backers with sufficient funds to pay the remaining balance of $235,000.

### VI.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Confirmation Order  shall constitute an Order rejecting all Executory Contracts and Unexpired Leases. The Debtor does not believe it has any executory contracts.

## VII.    TAX CONSEQUENCES OF PLAN

Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

## VIII.   INJUNCTION AND EXCULPATION.

The Plan provides that the Debtor, its shareholders, officers, directors, employees and professionals, their respective officers, directors, employees and professionals (including professional firms and individuals within such firms), shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, administration, funding, confirmation or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Bankruptcy Case, except for (i) acts or omissions as a result of willful misconduct or gross negligence and (ii) liability for any debt owed to the United States Government, any state, city or municipality arising under (a) the Internal Revenue Code or any state, city or municipal tax code, (b) the environmental laws of the United States or any state, city or municipality, (c) laws regarding the regulation of securities administered by the SEC or (d) any criminal laws of the United States, any state, city or municipality.

## IX. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

## X.    WHO MAY VOTE OR OBJECT

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired. In this case, Class 1 (if it elects optional treatment) Class 2 and Class 3-- are impaired and holders of claims in each of

these classes, therefore, have the right to vote to accept or reject the Plan.

    1. *What Is an Allowed Claim or an Allowed Equity Interest*?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case will expire on _____.

    2. *What Is an Impaired Claim or Impaired Equity Interest*?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

    3. *Who is **Not** Entitled to Vote*

Interest holders are receiving nothing under the Plan and their equity interests are being terminated and replaced. They are deemed to reject and are therefore not entitled to vote on the Plan. In general, the holders of the following five types of claims and equity interests are not entitled to vote:

• holders of claims and equity interests that have been disallowed by an order of the Court;

• holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

• holders of claims or equity interests that are unimpaired;

• holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

• holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

• administrative expenses.

    ***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

    4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

### XI.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

#### *1. Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

#### 2. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.***

### XII.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Here the Debtor has no tangible assets; it only has claims against third parties and a possessory interest in the Property. The Debtor estimates the value of its assets as follows:

1. Possessory Interests in Property—not marketable; estimated at $0.
2. Various Claims –not marketable; estimated to be less than $50,000.

In a liquidation a chapter 7 trustee would be appointed and likely incur $10-15,000 selling the claims and administering the estate. That would leave $35,000 for distribution to ALL creditors, which the Debtor estimates at more than $11,400,000 (unsecured claims. $4+mm; Mortgagee claim approx.$3.4mm and Landlord claim approx. $4mm). That would leave a return of .3% versus the 5-7% being offered under the Plan.

## XIII.  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

*1. Ability to Initially Fund Plan and Make Future Plan Payments And Operate Without Further Reorganization*

The Debtor believes it will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The Purchaser appears to be adequately funded so that it will be able to acquire the Mortgagee's rights on the Effective date to make the Plan work.

## XIV.  EFFECT OF CONFIRMATION OF PLAN

### A.  No Discharge Of Debtor

On the Effective Date of the Plan, the Debtor will not receive a discharge from any debt that arose before confirmation of the Plan.

## XV.  CONCLUSION

The Debtor believes that the Plan is the only feasible plan available to creditors and is far better than a liquidation of the Debtor by a Trustee. Accordingly, the Debtor asks that all creditors vote in favor of the Plan.


Dated:          New York, New York
                September 26, 2024


980 ATLANTIC HOLDINGS LLC          Law Offices of Isaac Nutovic



By: /s/*Raphael B. Elkaim*              By: /s/*Isaac Nutovic*
   Co- Managing Member                    Isaac Nutovic
                                       Attorneys for the Debtor
                                       261 Madison Avenue, 26th Floor
                                       New York, New York 10016

Tel No.: (917) 922-7963